**UNITED STATES of America and Keith R. Mueller, Special Agent, Internal Revenue Service, Petitioners–Appellees,**

v.

**Richard D. CLARK, CPA, and Joseph H. Thibodeau, Respondents–Appellants.**

No. 87–1705.

United States Court of Appeals, Tenth Circuit.

June 1, 1988.

Paula M. Junghans, Melnicove, Kaufman, Weiner, Smouse & Garbis, Baltimore, Md. (Joseph H. Thibodeau, Thibodeau and Moats, Denver, Colo., with her on the briefs), for respondents-appellants.

James H. Love, Tax Div., Dept. of Justice, Washington, D.C. (Robert N. Miller, U.S. Atty. and Dahil D. Goss, Asst. U.S. Atty., of counsel, Michael C. Durney, Acting Asst. Atty. Gen., Michael L. Paup and Charles E. Brookhart, Tax Div., Dept. of Justice, Washington, D.C., with him on the briefs), for petitioners-appellees.

Before LOGAN, ANDERSON and BALDOCK, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

This is an appeal from a district court order enforcing an Internal Revenue Service (IRS) summons for the production of various documents pertaining to the personal tax liability of Thomas C. Donovan (sometimes referred to as the "taxpayer" herein) for the years 1981–1984. Although various issues are presented, the central inquiry is whether, under the circumstances of this case, the act of producing the documents would have testimonial aspects (viz: admission of the "existence of the papers demanded and their possession or control by the taxpayer.... [and] the taxpayer's belief that the papers are those described in the subpoena." *Fisher v. United States*, 425 U.S. 391, 410, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1976)); and, if so, whether the communicative aspects of the act of production would incriminate the taxpayer in violation of his Fifth Amendment rights. The appellants concede that since all of the documents were prepared voluntarily the *contents* of the documents, whether incriminating or not, are not protected, and are not at issue in this case. *See United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984); *Fisher v. United States;* and *Couch v. United States*, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed. 2d 548 (1973).

I.

In February, 1986, Donovan was notified by IRS Special Agent Keith R. Mueller that he was the subject of a joint civil and criminal investigation with respect to his tax liabilities for the years in issue. Donovan hired attorney Joseph H. Thibodeau to represent him. Thibodeau, in turn, retained accountant Richard D. Clark to aid him in his representation of Donovan.[1]

On March 3, 1986, Donovan delivered certain personal financial records to Thibodeau. On the same day Donovan's accountant, Alfred Bruce Kasten, delivered to Clark all the financial records which Kasten had relating to Donovan. Kasten's records included "both records created by Kasten (workpapers, and a general ledger/detail trial balance), and original records of Donovan's which were in Kasten's hands." R.Vol. 1, Tab 10 at 3. When three days later Kasten was served by Agent Mueller with an IRS summons for these documents he indicated to Mueller that he had given them to Thibodeau. *Id.*

---

1. The government concedes that in that capacity Clark stands in the same position as Thibodeau for purposes of Thibodeau's assertion of the attorney-client privilege. Brief for the Appellees at 15 n. 7. *See United States v. Kovel,* 296 F.2d 918 (2d Cir.1961).

On March 12, 1986, IRS summonses were served on Thibodeau and Clark. These identical summonses required production of:

> All records pertaining to the performance of any accounting service, consulting services, advisory services and/or the preparation of Federal or State tax returns by Alfred Bruce Kasten ... for [Donovan] for the period January 1, 1981, through December 31, 1984, including but not limited to:
>
> a. Workpapers, schedules and summaries.
>
> b. Retention and/or engagement letters.
>
> c. Correspondence and/or memoranda.
>
> d. Financial statements.
>
> e. Copies of any tax returns.
>
> f. Forms W–2 and 1099.
>
> g. Any records of the above named individuals which reflect their income and expenses.
>
> h. Any and all other records pertaining to the above named individuals such as records of original entry or bank records, statements, deposit slips, cancelled checks, brokerage statements, real estate transactions, etc.

R.Vol. I, Tab 2 Exs. C & D (emphasis added).

The next day, the IRS issued a summons to Donovan. On April 7, Donovan responded to the summons by indicating that he did not have the records in question and that his lawyer had instructed him so to answer. On April 8, Thibodeau and Clark met with Agent Mueller and stated that although they possessed the documents received from Kasten, they considered at least some of those documents protected from production by Donovan's Fifth Amendment privilege and they therefore declined to produce any of the documents.

The government brought summons enforcement proceedings in the district court against Thibodeau, Clark, Donovan and Kasten, but subsequently dropped the proceedings against Donovan and Kasten because of their sworn statements that they had given the documents to Thibodeau and Clark. At the enforcement proceeding itself, the government argued that the summonses issued to Thibodeau and Clark were sufficiently inclusive to cover the documents received by Thibodeau and Clark from both Kasten and Donovan. Thibodeau and Clark did not contest that the workpapers prepared by Kasten were subject to the summons, but they argued that Donovan's records which Kasten had surrendered to Clark and Thibodeau, and the papers delivered by Donovan to Thibodeau were protected by Donovan's Fifth Amendment privilege against self-incrimination and the attorney-client privilege.

The district court rejected those arguments and granted the petition to enforce "with respect to any and all documents given to Mr. Clark and Mr. Thibodeau by Mr. Kasten and *any and all documents in their possession relating to the tax returns of Thomas C. Donovan from whatever source derived* with the exception of any diary or direct correspondence from Mr. Donovan asking for advice or relating facts upon which advice can be made." R.Vol. II at 13 (emphasis added).

Thibodeau obtained a stay of the district court's order and now appeals on essentially two grounds. First, Thibodeau argues that the act of production by Thibodeau and/or Clark would violate the attorney-client privilege to the extent that production could be incriminating to Donovan. Second, Thibodeau argues that the district court in its enforcement order impermissibly broadened the actual terms of the summons itself.[2] We largely affirm the district court's order, but reverse as to one part.

---

**2.** Thibodeau also argues that the summonses as drawn are impermissibly broad in scope so as to violate 26 U.S.C. § 7603. The record reveals, however, that Thibodeau failed to raise this argument before the district court, and thus we decline to consider it. *See Dothard v. Rawlinson,* 433 U.S. 321, 323 n. 1, 97 S.Ct. 2720, 2723–

24 n. 1, 53 L.Ed.2d 786 (1977); *Curtis Ambulance Inc. v. Board of County Comm'rs,* 811 F.2d 1371, 1386 (10th Cir.1987). At any rate, the cases do not support that contention. *See Rogers Transp., Inc. v. Stern,* 763 F.2d 165, 167 n. 2 (3d Cir.1985) ("The district court's determina-

## II.

Three categories of documents are involved here: Accountant Kasten's own workpapers relating to Donovan; Donovan's records which were or may at some time have been in Kasten's possession, but which were delivered by Kasten back to Donovan or directly to Clark/Thibodeau before service of summons; and Donovan's records which had never been in Kasten's possession and which were delivered by Donovan directly to Thibodeau. It does not appear in the record that any of the documents are records of a business.

■ The first category, Kasten's workpapers relating to Donovan, are not in issue. Thibodeau concedes, as he must, that they are not protected. Appellant's Opening Brief at 7 and Reply Brief at 3. Whether in his possession, or that of Kasten or Donovan, the accountant's workpapers must be produced in obedience to an IRS summons. *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1975); *Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973).[3]

■ Thibodeau asserts that documents falling in the other two categories are protected by the attorney-client privilege.[4] In situations such as this the availability of that privilege is measured by the degree to which the client would be protected by his Fifth Amendment rights from producing the documents himself. The principle is explained in *Fisher* as follows:

"Pre-existing documents obtainable from the client are not appreciably easier to obtain from the attorney after transfer to him. Thus, even absent the attorney-client privilege, clients will not be discouraged from disclosing the documents to the attorney, and their ability to obtain

informed legal advice will remain unfettered. It is otherwise if the documents are not obtainable by subpoena *duces tecum* or summons while in the exclusive possession of the client, for the client will then be reluctant to transfer possession to the lawyer unless the documents are also privileged in the latter's hands. Where the transfer is made for the purpose of obtaining legal advice, the purposes of the attorney-client privilege would be defeated unless the privilege is applicable. 'It follows, then, that *when the client himself would be privileged* from production of the document, either as a party at common law ... or as exempt from self-incrimination, the attorney having possession of the documents is not bound to produce.' 8 Wigmore § 2307, p. 592. Lower courts have so held. *Id.,* § 2307, p. 592 n. 1, and cases there cited; *United States v. Judson,* 322 F.2d 460, 466 (CA9 1963); *Colton v. United States,* 306 F.2d 633, 639 (CA2 1962). This proposition was accepted by the Court of Appeals for the Fifth Circuit below, is asserted by petitioners in No. 74–18 and respondents in No. 74–611, and was conceded by the Government in its brief and at oral argument. Where the transfer to the attorney is for the purpose of obtaining legal advice, we agree with it.

"Since each taxpayer transferred possession of the documents in question from himself to his attorney in order to obtain legal assistance in the tax investigations in question, the papers, if unobtainable by summons from the client, are unobtainable by summons directed to the attorney by reason of the attorney-client privilege. We accordingly proceed to the question whether the documents could have been obtained by summons ad-

tion that a summons is overbroad or unclear is ... within its discretion.").

**3.** It is improbable that Kasten's workpapers are difficult to identify and segregate from the other documents in question. There may be a valid reason why they were not produced, but none of substance appears in the record. While we presume no wrongdoing here, we express concern over Thibodeau's refusal to produce the accountant's workpapers in the face of law

which has been clearly established for more than a decade, and which Thibodeau has acknowledged from the beginning.

**4.** "[I]t is universally accepted that the attorney-client privilege may be raised by the attorney." *Fisher,* 425 U.S. at 402 n. 8, 96 S.Ct. at 1576–77 n. 8. Thus, it is not material that Donovan did not personally intervene in these proceedings to assert his own privilege.

dressed to the taxpayer while the documents were in his possession. The only bar to enforcement of such summons asserted by the parties or the courts below is the Fifth Amendment's privilege against self-incrimination."

*Fisher*, 425 U.S. at 404–05, 96 S.Ct. at 1577–78 (emphasis original).

The threshold requirement is that the records must have been transferred to Thibodeau to obtain legal advice, and that he retained them because they were needed for that purpose. That is a subject ripe with possibilities for investigation, development and comment in other cases. However, we do not pursue it here. The record supplies no evidence to contradict the stated purpose for the transfers being for legal advice. Likewise, in *Fisher*, the Supreme Court emphasized but did not pursue the requirement. It simply drew the conclusion, stating: "Since each taxpayer transferred possession of the documents in question from himself to his attorney in order to obtain legal assistance in the tax investigations in question ..." *Id.* at 405, 96 S.Ct. at 1578. Furthermore, the record affirmatively discloses that Thibodeau hired an accountant, Clark, to assist him in giving the requested advice.

We proceed, therefore, as the Supreme Court did in *Fisher* "to the question whether the documents could have been obtained by summons addressed to the taxpayer while the documents were in his possession," without violating his Fifth Amendment rights. *Id.* *Fisher* describes the inquiry as follows:

"The act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena tactily concedes the existence of the papers demanded and their possession or control by the taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena. *Curcio v. United States*, 354 U.S.

118, 125 [77 S.Ct. 1145, 1150, 1 L.Ed.2d 1225] (1957). The elements of compulsion are clearly present, but the more difficult issues are whether the tacit averments of the taxpayer are both 'testimonial' and 'incriminating' for purposes of applying the Fifth Amendment. These questions perhaps do not lend themselves to categorical answers; their resolution may instead depend on the facts and circumstances of particular cases or classes thereof."

*Id.* at 410, 96 S.Ct. at 1581.

The Court in *Fisher* concluded that compelled production of accountant's workpapers in the taxpayer's possession posed no realistic or substantial threat of self-incrimination in any of the categories listed: existence, possession, or authentication. In the case before us, however, the records in question are apparently non-business records, which pose quite a different problem. Thibodeau contends that *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984) stands for the proposition that compelled production of such records is barred by the Fifth Amendment.

The specific question in *Doe* was "whether, and to what extent, the Fifth Amendment privilege against compelled self-incrimination applies to the business records of a sole proprietorship." *Id.* at 606, 104 S.Ct. at 1239. The records in that case were in the owner's possession, as they are deemed to be here. They also constituted business records, which in general present a less urgent case for constitutional protection. But they were nevertheless regarded as private papers just as those with which we are concerned.[5] The Court in *Doe* held that "[t]he act of producing the documents at issue in this case is privileged and cannot be compelled without a statutory grant of use immunity...." *Id.* at 617, 104 S.Ct. at 1244.

There are significant differences between the documents involved in *Doe* and

---

5. However, the Supreme Court noted in *Doe* that the accountant's workpapers in *Fisher*, which related to the taxpayer's individual returns, were more personal than the papers sought in *Doe*. *Doe*, 465 U.S. at 610 n. 7, 104 S.Ct. at 1241 n. 7. Yet even in *Fisher* they were compelled to be produced.

those in this case. The Supreme Court emphasized in *Doe* that both the district court and the court of appeals had specifically determined that "the act of producing the documents would involve testimonial self-incrimination." *Id.* at 613, 104 S.Ct. at 1242. The Court stated that "we will not overturn that finding unless it has no support in the record. Traditionally, we also have been reluctant to disturb findings of fact in which two courts below have concurred." *Id.* at 614, 104 S.Ct. at 1243. (citations omitted) Further, the Supreme Court stated that:

> "On the basis of the findings made in this case we think it clear that the risk of incrimination was 'substantial and real' and not 'trifling or imaginary.' Respondent did not concede in the District Court that the records listed in the subpoena actually existed or were in his possession. Respondent argued that by producing the records, he would tacitly admit their existence and his possession. Respondent also pointed out that if the Government obtained the documents from another source, it would have to authenticate them before they would be admissible at trial. See Fed. Rule Evid. 901. By producing the documents, respondent would relieve the Government of the need for authentication. These allegations were sufficient to establish a valid claim of the privilege against self-incrimination. This is not to say that the Government was foreclosed from rebutting respondent's claim by producing evidence that possession, existence, and authentication were a 'foregone conclusion.' *Fisher*, 425 U.S., at 411 [96 S.Ct. at 1581]. In this case, however, the Government failed to make such a showing."

*Id.* at 614 n. 13, 104 S.Ct. at 1243 n. 13.

■ The most obvious distinction between this case and *Doe* is that the district court in this case found that the act of production would *not* be incriminating.[6] The next distinction is that the records sought in *Doe* had always been (or for purposes of the opinion in *Doe* were presumed to have been) in the taxpayer's own possession. In contrast, the records in question here were either the accountant's workpapers or the other records which had been delivered into the accountant's hands, and possessed by him for purposes of doing work in or from them. We attach particular importance to that fact.

As to the taxpayer's records which the accountant had in his possession, their existence and possession are a "foregone conclusion." *See Fisher*, 425 U.S. at 411, 96 S.Ct. at 1581. The accountant could be placed under oath and directed to identify each record which he had had in his possession, and the fact of his delivery of those records into the possession of another, specific party. In addition, logic dictates that the accountant's workpapers, which must be produced, will also show the existence of many if not all of the records subject to the summonses, including such items as bank and brokerage accounts. This is especially true where, as here, the accountant *must* rely on the taxpayer's records to prepare his tax returns. And it is not just the workpapers which may be examined for such purposes. In *Fisher*, other documents from the accountant's office, which were not protected from production, included retained copies of tax returns (which would include W–2 forms); retained copies of reports and other correspondence between the accounting firm and the taxpayer; and the accountant's analyses of the taxpayer's income and expenses which had been copied by the accountant from cancelled checks and deposit receipts. It simply strains credulity to theorize that records which had been delivered to the accountant for him to work on or from would not show up in some identifiable

---

**6.** A fair reading of the hearing in which the district court ordered the enforcement of the summons shows that it made such a finding. *See* R.Vol. II at 15 & 17. *See also In Re Grand Jury Subpoena Duces Tecum,* 754 F.2d 918, 921 n. 2 (11th Cir.1985) ("Although the district court did not make specific findings regarding admis-

sion of the existence, possession, or authenticity of the subpoenaed documents, we assume these considerations are subsumed in the court's broadly-worded finding that production does not implicate the appellants in any compelled testimonial self-incrimination.")

fashion in the accountant's own work.[7] As the Court stated in *Fisher:*

"Surely the Government is in no way relying on the 'truthtelling' of the taxpayer to prove the existence of or his access to the documents. 8 Wigmore § 2264, p. 380. The existence and location of the papers are a foregone conclusion and the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers. Under these circumstances by enforcement of the summons 'no constitutional rights are touched. *The question is not of testimony but of surrender.*' *In re Harris,* 221 U.S. 274, 279 [31 S.Ct. 557, 558, 55 L.Ed. 73] (1911)."

*Fisher,* 425 U.S. at 411, 96 S.Ct. at 1581 (emphasis added).

That conclusion is quite unlike that arrived at by the court of appeals in *Doe,* as quoted by the Supreme Court in *Doe,* that "[t]he most plausible inference to be drawn from the broad-sweeping subpoenas is that the Government, unable to prove that the subpoenaed documents exist—or that the appellee even is somehow connected to the business entities under investigation—is attempting to compensate for its lack of knowledge by requiring the appellee to become, in effect, the primary informant against himself." *Doe,* 465 U.S. at 613–14 n. 12, 104 S.Ct. at 1242–43 n. 12, (quoting *In re Grand Jury Empanelled March 19, 1980,* 680 F.2d 327, 335 (3d Cir.1982)).

As with the questions of existence and possession, for purposes of authentication, this case presents facts much closer to *Fisher* than to *Doe.* The terms of the summonses issued here do not oblige the taxpayer, through the production of documents, to authenticate the documents as being his own or as being accurate. The summonses merely request "[a]ll records pertaining to the performance of any accounting service ... by ... Kasten for [Donovan]." R.Vol. I, Tab 2 Exs. C & D. Thus, here "production would express noth-

ing more than the taxpayer's belief that the papers are those described in the subpoena." *Fisher,* 425 U.S. at 412–13, 96 S.Ct. at 1581–82.

Further, the rationale we apply to existence and possession applies in part to authentication. That is, when the existence and possession of records can be so readily identified through the accountant who received the records from the taxpayer, worked from them, and then delivered them back, the taxpayer's production does not add to the government's store of knowledge. The accountant himself is able to indicate whether or not the records pertained to his provision of accounting services for Donovan. Therefore for the purposes for which the government sought the records summonsed, their authentication is a foregone conclusion and their production is not incriminating.

To the extent that the government might attempt at trial to use the records obtained through these summonses for purposes other than those for which they were summonsed, we note that it must do so without attempting to authenticate the records through the taxpayer's production. But, actual authentication of the records for evidentiary purposes is easily accomplished without reliance on the act of production. Account records with financial institutions or other entities can be authenticated through those institutions. *See United States v. Fishman,* 726 F.2d 125, 127 (4th Cir.1983) ("Insofar as authentication is concerned to the extent the documents have been prepared by others ... those other persons can supply authentication, without recourse to the [act of production].");  *United States v. Schlansky,* 709 F.2d 1079, 1083 (6th Cir.1983), *cert. denied,* 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984) ("Employees of the banks can identify bank statements, cancelled checks and deposit slips which are prepared by or processed through the banks and can testify to their accuracy by comparing them to bank records.") Handwriting examplars, which the taxpayer must give, *Gilbert v. Califor-*

---

**7.** There is not a shred of evidence in the record that the accountant was just a repository or custodian. And, we reject Thibodeau's argu-

ment that the records in question were so temporarily in Kasten's possession that the taxpayer never relinquished possession.

*nia,* 388 U.S. 263, 265–67, 87 S.Ct. 1951, 1952–53, 18 L.Ed.2d 1178 (1967), can authenticate any handwritten materials. In addition, other authenticated documents, when compared with the contents of the summonsed documents, may serve to authenticate them. *See United States v. Rue,* 819 F.2d 1488, 1494 (8th Cir.1987) (authenticity of patient cards is a foregone conclusion given the availability of other authenticated documents against which they may be compared). In view of so many ways to authenticate documents, we refuse to base a ruling, for constitutional purposes, on the purely theoretical possibility that some document may be incapable of authentication except by the taxpayer's own act of production. That is especially true in view of the rule in this circuit that specificity is required in order properly to invoke Fifth Amendment protection. *United States v. Schmidt,* 816 F.2d 1477 (10th Cir.1987).

We hold, therefore, that the act of producing the documents responsive to the summonses would not cause the taxpayer to incriminate himself. Accordingly, they are not covered by the attorney-client privilege, and must be produced by Thibodeau/Clark.

■ This court's decision in *Schmidt,* to which we just alluded, provides an independent ground in support of our holding. It also governs certain potential records in the final category. That category includes records never physically delivered to Kasten, but directly referred to by the taxpayer in his dealings with Kasten for the purpose of obtaining services, and which were delivered by the taxpayer to Thibodeau. Here, Thibodeau has done little more than assert a general and blanket privilege. In *Schmidt,* we held that an IRS summons cannot be thwarted by such blanket assertions.

"Thus, in order to invoke the constitutional protection under the Fifth Amendment that bars compelled self-incrimination, appellants must demonstrate that they have a 'reasonable cause to apprehend danger' upon giving a responsive answer that 'would support a conviction,' or 'would furnish a link in the chain of evidence needed to prosecute' them for a violation of the criminal statutes. *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118, 1124 (1951). To satisfy this requirement, appellants must factually establish that the risks of incrimination resulting from their compelled testimonial communications to be 'substantial and "real,"' not merely trifling or imaginary, hazards of incrimination.' *Marchetti v. United States,* 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889, 901 (1968). Appellants are 'not exonerated from answering merely because (they) declare( ) that in so doing (they) would incriminate (themselves)—(their) say-so does not of itself establish the hazards of incrimination.' *Hoffman, supra,* at 486, 71 S.Ct. at 818. Appellants have offered no evidence of sworn statements to justify their claim that 'injurious disclosure could result' from a responsive production of the summoned documents. *Id.,* at 487, 71 S.Ct. at 818. They sought the protection of the Fifth Amendment under the 'act of production' doctrine in *Doe, supra,* by asserting, through their counsel, speculative and generalized allegations of self-incrimination that would establish a link in the chain of evidence for tax related criminal prosecution.

"Appellants' generalized fear of criminal prosecution for a violation of the tax laws is an insufficient basis for asserting a blanket claim of the Fifth Amendment privilege in refusing to produce any of the documents requested by the summonses. *See Borgeson v. United States,* 757 F.2d 1071, 1073 (10th Cir.1985) (per curiam). In order to validly raise the Fifth Amendment privilege, appellants must comply with the instructions of the summonses. At the appropriate time, appellants may interpose their claim of Fifth Amendment privilege *pertaining to specific documents and in response to individual questions upon their reasonable belief that a compulsory response by them to these testimonial matters will pose a substantial and real hazard of subjecting them to criminal liability. Hoffman, supra,* 341 U.S. at 486, 71 S.Ct. at 818. *At that*

*time, the appropriate parties could then seek judicial determination on each claim of privilege with respect to the specific documents summoned and questions asked by the IRS. United States v. Hodgson, 492 F.2d 1175, 1177 (10th Cir.1974); United States v. G & G Advertising Company, 762 F.2d 632, 635 (8th Cir.1985)."*

*Schmidt*, 816 F.2d at 1481–82 (10th Cir. 1987) (footnotes omitted) (emphasis added).

### III.

Nonetheless, we agree, as a final matter, with Thibodeau's contention that the district court impermissibly broadened the scope of the summons. The summons was expressly limited to records pertaining to services rendered to the taxpayer by Kasten. The district court's enforcement order required production of all of the taxpayer's financial records, without limitation. That expansion of the summons was in error. We therefore reverse in that regard, and confine the enforcement order to records of the taxpayer pertaining to the stated services performed by Kasten for the period stated.

Accordingly, the district court's order is AFFIRMED IN PART AND REVERSED IN PART.