UNITED STATES of America, Plaintiff,

v.

Billy Z. HOLLOWAY, Defendant.

No. 95–40053–01–SAC.

United States District Court,
D. Kansas.

Oct. 5, 1995.

1438

Charles D. Dedmon and David J. Phillips, Office of Federal Public Defender, Topeka, KS, for defendant.

Randy M. Hendershot, Office of United States Attorney, Topeka, KS, for plaintiff.

## MEMORANDUM AND ORDER

CROW, District Judge.

On June 28, 1994, the grand jury returned a four count indictment against Billy Z. Holloway. Count 1 charges Holloway with possession with intent to distribute cocaine base (in violation 21 U.S.C. § 841(a)(1)) on or about April 19, 1993; Count 2 charges Holloway with carrying a firearm during and in relation to the drug trafficking crime (in violation of 18 U.S.C. § 924(c)(1)) charged in Count 1. In Count 3, Holloway is charged with maintaining a place for the purpose of manufacturing, distributing, or using a controlled substance (in violation of 21 U.S.C. § 856(a)(1)). Count 4 charges Holloway with possession with the intent to distribute 84 grams of cocaine base. The crimes charged in Counts 3 and 4 are alleged to have occurred on January 3, 1995.

This case originally came before the court upon the following pretrial motions filed by Holloway:

**Motion to dismiss or suppress (Dk. 16).**

**Motion to sever counts (Dk. 17).**

The government has filed responses in opposition to each motion. *See* (Dk. 20 and 21).

On August 9, 1995, the grand jury returned a superseding indictment adding one additional count to the original indictment. Count 5 charges Holloway with knowing and intentional possession of a shotgun with a barrel less than 18 inches. The shotgun was apparently discovered when Holloway was arrested on counts three and four on June 30, 1995.

On August 11, 1995, based upon the superseding indictment and defense counsel's indication that its return might require additional or supplemental motions, the court set the time for the filing of additional motions. Holloway has since filed a new motion to sever counts (Dk. 28). The government has filed a response (Dk. 26).

On September 15, 1995, the court held a hearing on the defendant's motions. Having considered the evidence presented, the arguments and briefs of counsel, and the applicable law, the court is now prepared to rule.

**Motion to dismiss or suppress (Dk. 16).**

Holloway seeks dismissal of Counts 3 and 4 of the indictment, or in the alternative, an order suppressing certain evidence seized during the execution of a search warrant on January 3, 1995, on a house located at 1228 S.W. Locust St., Topeka, Kansas. During the execution of the search warrant, officers arrested or otherwise secured six occupants. One of the persons detained was Holloway. While Holloway was handcuffed, officers asked several questions. Because Holloway did not respond audibly, officers suspected that he had something in his mouth. One of the officers apparently ordered Holloway to spit out the contents of his mouth; Holloway apparently refused. Officers then grabbed and "physically manhandled" Holloway in an attempt to extract the unknown evidence. Unsuccessful in making Holloway relinquish the contents of his mouth, Officers sprayed CAPSTUN,[1] a chemical weapon, in Holloway's face. Officer Brian Hill testified that he applied a one-second burst of CAPSTUN to Holloway. Holloway testified that he was sprayed more than one time. Holloway also testified that during the officers' attempt to extract the contents of his mouth, he was choked from behind and that a knee was placed in his back, making it hard for him to breath. Holloway, an asthmatic, claims to have suffered great pain and loss of control of his facial muscles as a result of the spray. Ultimately, the officers' effort proved successful as Holloway disgorged a quantity of cocaine base from his mouth.

After Holloway disgorged the contents of his mouth, he was taken outside to the open air to alleviate the discomfort of the CAPSTUN. In addition, Holloway's face was washed off. Holloway was taken to police

---

1. CAPSTUN is apparently a pepper-based spray used to temporarily incapacitate a suspect without inflicting serious, permanent damage. CAPSTUN causes the eyes to tear, coughing, the nose to run, affects breathing and pain.

 Officer Hill, who was familiar with the effects of CAPSTUN based upon his training and use of the product, indicated that the continuum of force an officer may use runs from verbal commands to physical force. Under his training, CAPSTUN was to be used prior to the use of physical force.

headquarters. According to Holloway, the CAPSTUN caused him great physical distress. Holloway claims to have had difficulty breathing. Despite his pleas for assistance, officers did little to alleviate his discomfort. Eventually, however, the effects of the CAPSTUN wore off.

Holloway contends that the officers violated his Fourth and Fifth Amendment rights in obtaining the evidence from his mouth. Holloway contends that the officers' conduct was "outrageous, shocking to the conscience, an impermissible compulsion violating [his] freedom from self-incrimination, and an unreasonable search and seizure." Holloway suggests that the officers should have explored less intrusive means, like the passage of time, to obtain the evidence.

The government responds, arguing that the search was performed in a reasonable manner, taking into consideration the need for the evidence and safety of the officers and Holloway. The government argues that the use of the pepper spray was a superior alternative to the other options: choking, squeezing or waiting for the drugs to pass through Holloway's digestive system.

### Legal Standards

### Outrageous Governmental Conduct

■ The concept of outrageous conduct was first recognized by dictum in *United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973): "[W]e may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *United States v. Harris,* 997 F.2d 812, 815 (10th Cir.1993). Most circuits, including the Tenth, recognize outrageous government conduct as a viable defense. *United States v. Mosley,* 965 F.2d 906, 909 (10th Cir.1992). In other cases this court has considered but rejected defendants' claims of outrageous governmental conduct. *See United States v. Ailsworth* 873 F.Supp. 1450, 1461–1462 (D.Kan.1994) (defendants fail to prove that government's conduct was outrageous); *United States v. Holveck,* 867 F.Supp. 969, 973–975 (D.Kan.1994) (rejecting

defendants' claim of outrageous governmental conduct). The burden is with the defendant to prove this defense. *United States v. Pedraza,* 27 F.3d 1515, 1521 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 347, 130 L.Ed.2d 303 (1994).

■ Neither the Supreme Court nor the Tenth Circuit have reversed a conviction on this defense with one possible exception. *United States v. Diggs,* 8 F.3d 1520, 1523 (10th Cir.1993) (citing *Jacobson v. United States,* 503 U.S. 540, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992) (reversed conviction when government did not dispute inducing the defendant and failed to adduce evidence supporting the jury's verdict that the defendant was predisposed)); *see United States v. Harris,* 997 F.2d at 816 (only two circuit court decisions and a handful of district court decisions have set aside convictions or dismissed charges because of outrageous government conduct). The outrageous government conduct defense "is an extraordinary defense reserved for only the most egregious circumstances." *United States v. Mosley,* 965 F.2d at 910; *see United States v. Clonts,* 966 F.2d 1366, 1369 (10th Cir.1992) (the defense "has been severely limited").

■ To be so outrageous as to bar a prosecution, the government's conduct must offend "that 'fundamental fairness, shocking to the universal sense of justice,' mandated by the Due Process Clause of the Fifth Amendment." *Russell,* 411 U.S. at 432, 93 S.Ct. at 1643. As opposed to the defense of entrapment that looks at the defendant's state of mind, the defense of outrageous conduct focuses on the government's actions with respect to the charged offense. *Diggs,* 8 F.3d at 1525. This defense is resolved only after an inquiry into the totality of the circumstances of the particular case. *Mosley,* 965 F.2d at 910.

### Excessive Force

■ In *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989), the Supreme Court held that *"all* claims that law enforcement officers have used excessive force-deadly or not—in the course of an arrest, investigatory stop, or

other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." [2] *See Austin v. Hamilton,* 945 F.2d 1155, 1158 (10th Cir.1991) ("As a general matter, claims based on the use of excessive force during *arrest* are now governed by the objective reasonableness standard of the fourth amendment."); *Swanson v. Fields,* 814 F.Supp. 1007, 1016 (D.Kan.), *aff'd,* 13 F.3d 407 (10th Cir.1993). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of ' " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' " ' against the countervailing governmental interests at stake." *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872 (quoting *Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1968) (quoting *United States v. Place,* 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983)).

 "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872. A police officer may even use deadly force in those situations where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others. *Tennessee v. Garner,* 471 U.S. at 11, 105 S.Ct. at 1701.

Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish,* 441 U.S. 520, 559 [99 S.Ct. 1861, 1885, 60 L.Ed.2d 447] (1979), however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to

the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *See Tennessee v. Garner,* 471 U.S. at 8–9 [105 S.Ct. at 1699–1700] (the question is "whether the totality of the circumstances justifie[s] a particular sort of ... seizure").

The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.... The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *See Scott v. United States,* 436 U.S. 128, 137–139 [98 S.Ct. 1717, 1723–1724, 56 L.Ed.2d 168] (1978); *see also Terry v. Ohio, supra,* [392 U.S. 1] at 21 [88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968) ] (in analyzing the reasonableness of a particular search or seizure, "it is imperative that the facts be judged against an objective standard"). An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

*Graham,* 490 U.S. at 396–397, 109 S.Ct. at 1872; *see Pride v. Does,* 997 F.2d 712, 716–717 (10th Cir.1993); *Swanson,* 814 F.Supp. at 1016–1017.

### Use of Force to Obtain Evidence From Suspect's Person

 To belabor the obvious, there is no constitutional right to destroy or secret evi-

---

2. In light of this holding, and because the outrageous conduct claimed by Holloway was the use of force to obtain the drugs from his mouth at the time he was in custody, the court's analysis of Holloway's outrageous governmental conduct claim is more appropriately analyzed under

Fourth Amendment standards. Nevertheless, because the defendant raises the argument of "outrageous governmental conduct" the court has deemed it appropriate to set forth a separate but brief discussion of the concept of outrageous governmental conduct.

dence. *Cf. United States v. Corral–Corral,* 899 F.2d 927, 930 (10th Cir.1990) (" 'The essence of [defendant's argument] is that there is some 'constitutional right' to destroy evidence. This concept defies both logic and common sense.' ") (quoting *Segura v. United States* 468 U.S. 796, 816, 104 S.Ct. 3380, 3391, 82 L.Ed.2d 599 (1984)). However, evidence may not be obtained in derogation of the defendant's constitutional rights.

In *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), based upon "some information that [the petitioner here] was selling narcotics," without a warrant, police officers broke into Rochin's dwelling and forced the door to his room open. Officers observed two capsules near Rochin and asked "whose stuff is this?" Rochin seized the capsules and placed them into his mouth. When Rochin did not cooperate, officers took Rochin to a hospital and directed that an emetic be administered to induce vomiting. *Id.* at 166, 72 S.Ct. at 206. The Supreme Court, recognizing the individual's interest in "human dignity," *id.* at 174, 72 S.Ct. at 210, held the search and seizure unconstitutional under the Due Process Clause.

■ Since *Rochin* was decided, the courts have had several occasions to consider the issue of whether an officer's use of force to obtain evidence from the person of a suspect was appropriate. As a practical matter, the determination of whether the use of force to obtain evidence was reasonable simply turns on a consideration of the facts and circumstances of each case. *See Blackford v. United States,* 247 F.2d 745, 751 (9th Cir. 1957) ("There is no slide-rule formula yet devised for ascertaining whether specific conduct is or is not reasonable.").

In cases similar or analogous to the case at bar, courts have generally found the officers' conduct to fall short of high threshold of "outrageous" or "shocking to the conscience." In *Yanez v. Romero,* 619 F.2d 851 (10th Cir.), *cert. denied,* 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980), the Tenth Circuit held that threats to use a catheter to take a urine sample from a reluctant prisoner did not rise to the level in *Rochin.* In reaching that decision, the Tenth Circuit commented:

It is to be gleaned from the evidence that the practice of either threatening to use a catheter or the actual use of it is not an infrequent occurrence in New Mexico. While this may not be shocking to the extent that it was in the *Rochin* case, it is nevertheless an undesirable practice which is ultimately likely to produce a fact situation which will be ruled shocking and unlawful. We are not, however, justified in reaching this conclusion in the present case because of the fact that the Rochin decision pretty much stands by itself and is limited to its particular facts. This is not to say that you would have to have a stomach pump in order to satisfy the requirements, but there would have to be something akin to it plus gross circumstances equal to the forceful entry into the home and bedroom of the defendant and the forceful effort to obtain the evidence. We do not say that the Supreme Court's decision in *Rochin* has eroded, but we do say that it has been applied in a positive way quite infrequently.

619 F.2d at 854. Other cases have similarly found searches of a suspect's person reasonable, despite the fact that the evidence is obtained from the suspect's mouth or other orifice. *See Becerril v. Kidd,* 1992 WL 207930, No. 90–16370, 1992 U.S.App. LEXIS 20831 (9th Cir. Oct. 11, 1991) (no excessive force where officer strikes suspect "once on the back of the head" to dislodge a syringe suspect held in his mouth); *United States v. Harrison,* 432 F.2d 1328 (D.C.Cir.1970) (during the execution of a warrant, officer's act of grabbing suspect by throat and thereby preventing the suspect from swallowing heroin capsules was reasonable); *United States v. Caldera,* 421 F.2d 152 (9th Cir.1990); *Blackford,* 247 F.2d at 753 (involuntary search of suspect's rectum for narcotics reasonable); *State v. Desmond,* 593 So.2d 965, 969 (La. App. 4 Cir.1992) ("Law enforcement officials may adopt reasonable measures to retrieve contraband and prevent its destruction. Although policemen can use reasonable force to prevent the swallowing of evidence, officers may not constitutionally beat and choke suspects in order to gain that evidence."); *State v. Jacques,* 225 Kan. 38, Syl. ¶ 1, 587 P.2d 861 (1978) ("When an officer has probable cause

to believe that a criminal offense is being committed in his presence, he has the right and duty to take reasonable measures to ensure that incriminating evidence is not destroyed; and he may use reasonable force to subdue the defendant and prevent the defendant from swallowing the evidence."); *People v. Bracamonte,* 15 Cal.3d 394, 124 Cal.Rptr. 528, 540 P.2d 624 (1975) ("Inasmuch as the mouth is not a sacred orifice and there is no constitutional right to destroy or dispose of evidence, attempts to swallow evidence can be prevented (citations omitted) as long as excessive force is not employed.").[3]

The court finds that the use of force and CAPSTUN to obtain the contents of Holloway's mouth was reasonable, nor does the conduct of the officers shock the conscience of the court. *Rochin* is distinguishable in several respects. First, officers in the case at bar were executing a valid warrant. Second, the officers' conduct in the case at bar was substantially less intrusive and abusive than the outrageous acts of the officers in *Rochin.* Despite the absence of a CAPSTUN report,[4] the court credits Officer Hill's testimony that Holloway was only sprayed once and that the physical force used in restraining Holloway and obtaining the contents of his mouth was reasonable under the totality of circumstances. Officers were not required to simply wait to let nature take its course. *See Blackford,* 247 F.2d at 753. In short, the court finds that the officers' use of force was not unreasonable or outrageous.

Finally, while not argued by the government, the removal of the crack cocaine from Holloway's mouth potentially minimized the risk of accidental overdose from ingestation of the narcotics. *See United States v. Bazy,* 1994 WL 539300 (D.Kan. Aug. 29, 1994).

### Fifth Amendment Right Against Self–Incrimination

Holloway, without significant or meaningful evaluation, argues that the officers' actions violated his Fifth Amendment right against self-incrimination. The government argues that the Fifth Amendment right against self-incrimination does not apply to non-testimonial evidence.

Holloway has not demonstrated that his Fifth Amendment right against self-incrimination is implicated or has in any way been violated. The Fifth Amendment privilege against self-incrimination "only attaches to testimonial compulsion and does not attach to demonstrative, physical or real evidence." *United States v. Delaplane,* 778 F.2d 570, 575 (10th Cir.1985) (citations omitted), *cert. denied,* 479 U.S. 827, 107 S.Ct. 104, 93 L.Ed.2d 54 (1986). In *Gilbert v. California,* 388 U.S. 263, 266–67, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178 (1967), the Supreme Court held that compelling production of handwriting exemplars does not violate the Fifth Amendment. *See United States v. Clark,* 847 F.2d 1467, 1473 (10th Cir.1988) (taxpayer must give handwriting exemplar); *see also South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) (admission into evidence of refusal to take blood-alcohol test does not violate the Fifth Amendment right against self-incrimination); *Schmerber v. California,* 384 U.S. 757, 765, 86 S.Ct. 1826, 1833, 16 L.Ed.2d 908 (1966), (compelling a blood test from a suspect does not violate the Fifth Amendment right against self-incrimination); *United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973) (compelling production of voice exemplars does not violate the Fifth Amendment right against self-incrimination); *United States v. Brown,* 920 F.2d 1212, 1215 (5th Cir.1991) (summarizing cases finding no violation of the Fifth Amendment privilege against self-incrimination). The officers' extraction of the cocaine from Holloway's mouth did not violate his Fifth Amendment privilege against self-incrimination. *See Blackford,* 247 F.2d at 754 ("The privilege [against self-incrimination] has never had nor was it intended to have application to the removal of real evidence from the person of the accused.").

---

**3.** "However, choking someone to recover evidence violates due process, without any need to inquire into the precise degree of choking involved." *People v. Johnson,* 231 Cal.App.3d 1, 282 Cal.Rptr. 114 (1st App.Dist.1991).

**4.** Officer Hill apparently did not file a report special "CAPSTUN" report indicating that he had used CAPSTUN on Holloway.

Holloway's motion to dismiss or suppress is denied.

**Motions to sever counts (Dk. 17 and Dk. 28).**

■ Pursuant to Fed.R.Crim.P. 8(a) and 14, Holloway asks the court to sever Counts 1 and 2 from Counts 3 and 4. Holloway's supplemental motion apparently seeks severance of the same counts plus severance of count 5 from all of the other counts. Holloway contends that the counts are misjoined. Holloway argues that Counts 1 and 2, which allege crimes occurring on or about April 19, 1993, are dissimilar in character and are unconnected to Counts 3 and 4, which allege crimes occurring approximately seventeen months later. Similarly, count 5, which is alleged to have occurred on June 30, 1995, are also dissimilar and not temporally related to the other crimes.

Specifically, Holloway argues that the crimes alleged in Counts 1 and 2 are distinct from the crimes charged in Counts 3 and 4. According to the discovery provided by the government, Counts 1 and 2 arise out of a car chase. Holloway then allegedly fled from the car. While escaping from the police, Holloway allegedly dropped a firearm and cocaine. In Counts 3 and 4, eighty-four grams of cocaine base was found in the house. At the time the search warrant was executed, the house was occupied by at least six persons; one or two person may have escaped into nearby woods.

Holloway also suggests that the counts be severed for trial pursuant to Rule 14. Holloway argues that he will be prejudiced in the following respects if his request is not granted:

1. He will be embarrassed or confounded in presenting separate defenses;

2. The jury may use the evidence of one crime to infer a criminal disposition of the defendant; or

3. The jury may cumulate the evidence applicable to certain crimes and find guilt when, if the counts were considered separately, it might acquit.

4. The mixing and matching of drug and gun counts is extremely prejudicial.

Holloway suggests that it "is a real possibility" that he will testify in his own defense regarding Counts 1 and 2, challenging the identification of the officers. In contrast, he apparently does not intend to testify regarding Counts 3 and 4, leaving an embarrassing void. Holloway also argues that the 1993 events would not be admissible under Fed. R.Evid. 404(b) in a separate trial of Counts 3 and 4. Holloway contends that count 5 "presents a confusing impact on the other firearm count, count two." [5]

The government opposes Holloway's motion. The government argues that the defendant merely wants "two bites at the apple," *i.e.*, two chances at acquittal. The government argues that both dates concern similar drug trafficking crimes—possession of crack cocaine with the intent to distribute. The government contends that it is not necessary that the crimes be identical to be joined in one indictment. The government also argues that the evidence of the 1993 events would be admissible under Rule 404(b) to prove knowledge and intent in Counts 3 and 4.

The Tenth Circuit recently discussed the issue of proper joinder under Rules 8 and 14:

A question of misjoinder under rule 8 is a question of law, subject to de novo review. *United States v. Hollis*, 971 F.2d 1441, 1456 (10th Cir.1992), *cert. denied,* [507 U.S. 985], 123 L.Ed.2d 148, 113 S.Ct. 1580 (1993); *United States v. Cardall*, 885 F.2d 656, 667 (10th Cir.1989). According to Rule 8(a) joinder of offenses is proper if the offenses are "of the same or similar character." *United States v. Holland*, 10 F.3d 696, 699 (10th Cir.1993), *cert. denied sub nom. Kelly v. United States*, [— U.S. ——], 126 L.Ed.2d 702, 114 S.Ct. 739 (1994); *United States v. Sturmoski*, 971 F.2d 452, 460 (10th Cir.1992). And we have previously stated that Rule 8 "is construed broadly to allow liberal joinder to enhance the efficiency of the judicial system." *United States v. Hopkinson*, 631 F.2d 665, 668 (10th Cir.1980), *cert. denied,*

---

**5.** Based upon the statements of counsel during the hearing, however, it appears that the defendant is primarily concerned with obtaining a severance of counts 1 and 2 from counts 3 and 4 and is less concerned about obtaining a severance of count 5 from any of the other counts.

459 U.S. 854 [450 U.S. 969, 101 S.Ct. 1489, 67 L.Ed.2d 620] (1981); (citations omitted). In the present case, Count 161, knowingly engaging in the manufacture of marijuana plants is a drug offense in violation of the Drug Abuse Prevention and Control Act of Title 21. Counts 2 and 3, knowingly and intentionally selling and offering for sale drug paraphernalia, are also drug offenses in violation of the same comprehensive act. We conclude, therefore, that the joinder of Count 161 was proper under Rule 8(a) because it was an offense of the "same or similar character." *Cf. United States v. Fortenberry*, 919 F.2d 923, 925 (5th Cir. 1990) (concluding that because both charges were for weapons violations they were of the same or similar character within the meaning of the rule governing joinder of claims), *cert. denied*, 499 U.S. 930, 111 S.Ct. 1333, 113 L.Ed.2d 265 (1991).

However, even in the absence of a misjoinder under Rule 8(a), the court may order the separate trials of counts " 'if it appears that a defendant ... is prejudiced by a joinder of offenses.' " *United States v. Levine*, 983 F.2d 165, 167 (10th Cir.1992) (quoting Fed.R.Crim.P. 14). "In deciding on a motion for severance, the district court has a duty to weigh the prejudice resulting from a single trial of counts against the expense and inconvenience of separate trials." *Hollis*, 971 F.2d at 1456; *Cardall*, 885 F.2d at 668. "The decision whether to grant or deny severance is within the sound discretion of the trial court, and will not be disturbed on appeal unless there is an affirmative showing of an abuse of discretion." *Id.* at 667.

*United States v. Janus Industries*, 48 F.3d 1548, 1557 (10th Cir.1995).

The court denies the defendant's motion for severance. The defendant has not demonstrated that severance is either necessary or appropriate in this case. The court is satisfied that the counts are sufficiently similar in character to permit joinder under Rule

8. *See Janus Industries*, 48 F.3d at 1557 (crimes arising under the Drug Abuse Prevent and Control Act of Title 21 properly joined under Rule 8(a)).

 Nor is the court convinced that severance is appropriate under Rule 14. "In deciding on a motion for severance, the district court has a duty to weigh the prejudice resulting from a single trial of counts against the expense and inconvenience of separate trials." *Janus Industries*, 48 F.3d at 1557 (quoting *Hollis*, 971 F.2d at 1456). " 'Neither a mere allegation that defendant would have a better chance of acquittal in a separate trial, nor a complaint of the "spillover effect" ... is sufficient to warrant severance.' " *Janus Industries*, 48 F.3d at 1557 (quoting *Levine*, 983 F.2d at 167 (quoting *United States v. Bailey*, 952 F.2d 363, 365 (10th Cir.1991)) (alteration in original). In short the defendant has not demonstrated that he will be prejudiced by the joinder of the five counts.

In addition, it is possible that the evidence of each transaction would be admitted under Fed.R.Evid. 404(b). See *Janus Industries*, 48 F.3d at 1557. Finally, the court is confident that the jury will receive proper instructions regarding their consideration of the evidence and its application to the law. " 'The assumption that juries can and will follow the instructions they are given is fundamental to our system of justice.' " *United States v. Lonedog*, 929 F.2d 568, 576 (10th Cir.1991) (quoting *United States v. Cardall*, 885 F.2d 656, 668 (10th Cir.1989)).

As to Holloway's contention that he wishes to testify as to counts 1 and 2 but remain silent as to counts 3 and 4,[6] the court is not satisfied that the defendant has made a sufficient showing under the criteria adopted by the Tenth Circuit. A similar issue was addressed in *United States v. Martin*, 18 F.3d 1515, 1518 (10th Cir.1994):

[The defendant's] contention that he was prejudiced because he wished to remain

---

6. Based upon his supplemental brief, the court is uncertain whether Holloway intends to testify with regard to count 5. Holloway merely argues that "[b]y joinder of these counts for trial, Mr. Holloway may be precluded from presenting a viable defense to a particular group of these counts in order to avoid inconsistent or confusing defenses, thus violating his fair trial rights and right to present a defense."

**1446**

silent on one count but testify and mount a defense on another count, was addressed in *United States v. Cox,* 934 F.2d 1114, 1119–20 (10th Cir.1991):

> Defendant alternatively argues that he was prejudiced because he wished to remain silent on counts one and two (the marijuana offenses), but testify and mount an entrapment defense on counts five through eight (the other drug offenses). When the district court refused to sever these offenses, defendant was forced either to testify or to remain silent on both counts.

> In *Valentine,* 706 F.2d at 291, [*United States v. Valentine,* 706 F.2d 282 (10th Cir.1983) ] we discussed what a defendant who wishes to remain silent on some counts and testify on other counts must do before he is entitled to a severance under rule 14:

> "[N]o need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing, it is essential that the defendant present enough information—regarding the nature of the testimony that he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it to intelligently weigh the considerations of 'economy and expedition in judicial administration' against the defendant's interest in having a free choice with respect to testifying."

18 F.3d at 1518–1519. Under this standard, Holloway has not made a convincing showing that severance under Rule 14 is appropriate.

IT IS THEREFORE ORDERED that Holloway's Motion to dismiss or suppress (Dk. 16) and Motion to sever counts (Dk. 17 and Dk. 28) are denied.