In the Matter of MATEO RUIZ, Individually and as Administrator of the Estate of HERMINA RUIZ, Deceased, Appellant, v NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, Respondent.

First Department, February 7, 1991

## APPEARANCES OF COUNSEL

*Joseph Miklos* of counsel *(Joseph P. Awad* and *Meryl R. Neuren* with him on the brief; *Reichenbaum & Silberstein,* attorneys), for appellant.

*Fay S. Ng* of counsel *(Pamela Seider Dolgow* with her on the brief; *Victor A. Kovner, Corporation Counsel,* attorney), for respondent.

## OPINION OF THE COURT

MILONAS, J.

On May 14, 1988, petitioner herein, Mateo Ruiz, brought his wife Hermina to Lincoln Hospital after she slipped and fell outside their home. According to petitioner, physicians at the hospital concluded that she was merely suffering from the effects of menopause notwithstanding that they failed to conduct an examination. She thereafter was taken back to Lincoln Hospital 4 or 5 additional times but no treatment was allegedly ever rendered to her or X rays performed. Instead, the doctors reiterated their insistence that she was merely undergoing menopause. Finally, in June of 1988, Hermina Ruiz was diagnosed as afflicted with a brain tumor and was admitted to Lincoln Hospital where she remained until her death on August 11, 1988.

It is petitioner's contention that during his late wife's two-month hospitalization, she was severely mistreated and neglected, sustaining such injuries as being left naked and covered with bed sores, maggots swarming over her, her dressings unchanged and dirty and her back ulcerated from the lack of a proper mattress. Petitioner, thus, asserts that the negligent treatment and abandonment of care by Lincoln Hospital denied his wife any possibility of remission of her brain tumor, increased her pain and suffering and caused emotional distress. Petitioner wrote to Andrew Stein, President of the City Council, on November 2, 1988 in which he complained about the purported mistreatment by Lincoln Hospital. Stein, in turn, sent a letter on December 2, 1988 to the New York State Department of Health. An investigation of the matter ensued, and, on March 31, 1989, the Department of Health wrote to Stein detailing certain procedural deficiencies which, in its view, did not amount to medical malpractice. A hearing was thereupon conducted at City Hall on April 18, 1989 at which respondent New York City Health and Hospital Corporation (NYCHHC) was represented and at which peti-

tioner testified. However, no formal notice of claim was filed against defendant during this time.

By notice of motion dated June 12, 1989, less than one year from the date of Hermina Ruiz's death, petitioner moved pursuant to General Municipal Law § 50-e for leave to file a late notice of claim. On August 7, 1989, petitioner was appointed administrator for the decedent's estate. Later that same month, on August 30, 1989, the Supreme Court issued a decision denying the application for permission to file the late notice of claim, stating that: "While the court has sympathy for claimant's loss it cannot overlook the notice requirements of GML 50-e. Claimant has not come forward with any proof of incapacitation for 90 days after the death of his wife to excuse the eleven month delay in seeking to file a notice of claim. The fact that claimant wrote a letter to Borough President Stein complaining of the same acts of negligence within the 90 day period is not only not notice to the City, but to some degree belies the proferred excuse of 'medical, emotional and family difficulties'."

■ Plaintiff's subsequent motion for reargument was granted, but, upon reargument, the court adhered to its original determination insofar as petitioner's claim for personal injuries, medical expenses and loss of services was concerned and held in abeyance so much of the motion as sought to file a late notice of claim for wrongful death so that petitioner could prove within 60 days that he and Mateo Ruiz Gonzalez, the person who had been appointed administrator of decedent's estate, were the same individual. Petitioner has appealed. In that connection, there is no indication that respondent NYCHHC has ever challenged the genuineness of petitioner's letters of administration, nor does the document itself disclose any basis to doubt either its validity or that it was issued to petitioner herein. It was, therefore, improper for the court to burden petitioner with having to prove that he was the person designated in the letters of administration.

■ ■ Section 50-e (1) (a) of the General Municipal Law requires the service of a notice of claim as a condition precedent to the commencement of a tort action against a public corporation within 90 days after the claim arises, "except that in wrongful death actions, the ninety days shall run from the appointment of a representative of the decedent's estate", but, in any event, the action must be instituted no longer than 1 year and 90 days from the date of death (Brennan v City of New York, 59 NY2d 791; see also, Matter of Donovan v County

*of Niagara,* 64 NY2d 973, *affg* 100 AD2d 740). Since petitioner was within the statutory limitations period prescribed for filing a notice of claim for a wrongful death action, he had an absolute right to submit such a claim. Significantly, the court endeavors to separate the wrongful death action, for which General Municipal Law § 50-e (1) (a) expressly authorizes that the 90-day period does not begin to run until a representative of decedent's estate is appointed, from the causes of action for personal injuries, medical expenses and loss of services, thereby disregarding settled law that damages for wrongful death may include such items as loss of support, services, voluntary assistance, medical and funeral expenses *(Odom v Byrne,* 104 AD2d 863; *Fell v Presbyterian Hosp.,* 98 AD2d 624).

Pursuant to EPTL 5-4.3 (a), the damages in a wrongful death action consist of "just compensation for the pecuniary injuries resulting from the decedent's death to the persons for whose benefit the action is brought. In every such action, in addition to any other lawful element of recoverable damages, the reasonable expenses of medical aid, nursing and attention incident to the injury causing death and the reasonable funeral expenses of the decedent paid by the distributees, or for the payment of which any distributee is responsible, shall also be proper elements of damage." Therefore, in *De Long v County of Erie* (60 NY2d 296), the Court of Appeals upheld a jury wrongful death award in favor of plaintiff therein where the trial court had permitted expert testimony regarding the monetary value of the services of decedent, a housewife, since it was the deceased's distributees or heirs, rather than the decedent herself, who had suffered the loss. Indeed, it is this distinction between whether the damages have been sustained by the distributees or the decedent which is crucial in determining the underlying nature of the claim; that is, whether the damages belong in the first instance to the decedent or the decedent's distributees *(see, Parilis v Feinstein,* 49 NY2d 984; *Ratka v St. Francis Hosp.,* 44 NY2d 604; *Public Adm'r of Kings County v U.S. Fleet Leasing,* 159 AD2d 331).

Further, the damages in a wrongful death action are, by statute, limited to "pecuniary injuries" suffered by the beneficiaries of the decedent's estate and "do not include those damages which could have been recovered in a personal injury action had the decedent survived" *(Parilis v Feinstein, supra,* at 985). Since there is no common-law cause of action for wrongful death under New York State law *(Ratka v St. Francis Hosp., supra; see also, Liff v Schildkrout,* 49 NY2d

622), only those damages permissible under the statute are available for such a claim. In contrast, a cause of action for conscious pain and suffering of the decedent prior to death accrues to the deceased's estate as part of a personal injury action rather than to the distributees or heirs *(Ratka v St. Francis Hosp., supra; Baker v New York City Health & Hosps. Corp.,* 36 NY2d 925). Accordingly, a claim for conscious pain and suffering is distinct and separate from one for wrongful death *(Dunefsky v Montefiore Hosp. Med. Center,* 162 AD2d 300 [June 21, 1990]; *Chattergoon v New York City Hous. Auth.,* 161 AD2d 141, *appeal dismissed* 76 NY2d 875; *Collins v Jamaica Hosp.,* 158 AD2d 649; *DeFilippis v State of New York,* 157 AD2d 826). Similarly, a claim for loss of consortium is not encompassed within a wrongful death action *(Liff v Schildkrout, supra).* Such a cause of action may, of course, be permitted "to reflect loss of consortium during the period of decedent's conscious pain and suffering" as part of a personal injury action *(Liff v Schildkrout, supra,* at 634). The reason for this, as explained by the Court of Appeals in *Liff v Schildkrout (supra,* at 633), is that: "The qualifying phrase 'pecuniary injuries' has been retained since the enactment of the first wrongful death statute in this State (L 1847, ch 450) and has been consistently construed by the courts as excluding recovery for grief, and loss of society, affection and conjugal fellowship—all elements of the generic phrase 'loss of consortium'."

■ Petitioner, consequently, must obtain leave to serve a late notice of claim with regard to any claims which are being advanced on behalf of the estate itself; that is, causes of action which his wife could have interposed for herself were she still alive. Section 50-e (5) allows a court to extend the time to serve a notice of claim against a municipality or its subdivision although such extension may not exceed the statutory limitations period pertaining to the commencement of the action itself. Among the factors to be considered by the court in that respect are whether the public corporation acquired actual knowledge of the essential facts constituting the claim within the specified time or a reasonable time thereafter and whether the claimant was physically incapacitated or died before the time limit for service of the notice of claim.

Notwithstanding that the section provides broad discretion to the court to take into account all of the relevant facts and circumstances, the court here, by compelling petitioner to demonstrate that he had been physically incapacitated from filing the notice within the requisite 90 days, converted an

element which the court should merely consider into a precondition. Since petitioner did not contend that he was physically disabled from filing a notice of claim, the trial court was not warranted in imposing upon petitioner the requirement that he establish his disability. Proof of physical incapacity is not a prerequisite of the Supreme Court's exercising its discretion to grant an extension *(see, Baker v New York City Health & Hosps. Corp., supra).*

■ According to General Municipal Law § 50-e (5), the court, as heretofore noted, shall, in deciding whether to grant an extension of time in which to serve a late notice of claim, consider, among other factors, whether the public corporation acquired actual knowledge of the underlying facts and whether the claimant was physically incapacitated or died before the time limited for service of the notice. Certainly, the death of Hermina Ruiz is an important matter for the court to assess in ascertaining whether it would be appropriate to grant the application for leave to file a late notice. Additionally, it is clear that respondent in the instant matter possessed actual notice of the circumstances surrounding the hospitalization and death of the deceased within months thereafter in that petitioner's letter to Andrew Stein instigated a prompt investigation and subsequent hearing into his complaints. As the Court of Appeals observed in *Matter of Beary v City of Rye* (44 NY2d 398, 412-413): "It has been said that 'The only legitimate purpose served by the notice' is prompt investigation and preservation of evidence of the facts and circumstances out of which claims arise (21st Annual Report of NY Judicial Conference, 1976, p 302; *Adkins v City of New York,* 43 NY2d 346, 350; *Winbush v City of Mount Vernon,* 306 NY 327, 333; cf. *Salesian Soc. v Village of Ellenville,* 41 NY2d 521, 524). * * * [W]e consider it significant that the amendment expressly directs that whether the public corporation did or did not have knowledge be accorded great weight. Obviously, this is intended to meet legislative concern for assuring reasonably prompt investigative opportunity under the amendment. For even when a public body has had no formal alert that a claim in fact will be brought, actual knowledge of the facts within 90 days or shortly thereafter makes its unlikely that the prejudice will flow from a delay in filing that does not reach beyond the statutory period of a year."

Since an investigation was started within at least four months of the decedent's death, and NYCHHC even had its

own representative present at the ensuing hearing at City Hall, respondent's assertion of prejudice arising from petitioner's failure to file a timely notice of claim is not credible. An examination of the record herein reveals that he had a reasonable excuse for the delay, the application for leave to file a late notice of claim is timely under General Municipal Law § 50-e (5), his claims on behalf of the decedent's estate appear meritorious, and there is no prejudice to respondent. Under these circumstances, permission should have been granted for the late filing.

Consequently, the appeal from the order of the Supreme Court, Bronx County (Herbert Shapiro, J.), entered on October 18, 1989, which denied petitioner's application for leave to serve a late notice of claim pursuant to General Municipal Law § 50-e, should be dismissed as superceded by the appeal from the order of June 19, 1990, without costs or disbursements.

Order of the Supreme Court, Bronx County (Herbert Shapiro, J.), entered on or about June 19, 1990, which granted petitioner's motion to reargue and, upon reargument, adhered to its prior determination, should be modified on the law, the facts and in the exercise of discretion to the extent that, upon reargument, the application for leave to serve a late notice of claim should be granted in full, without costs or disbursements, and otherwise affirmed.

Ross, J. P., CARRO, ROSENBERGER and ASCH, JJ., concur.

Appeal from order, Supreme Court, Bronx County, entered October 18, 1989, dismissed, without costs and without disbursements, as superceded by the appeal from the order of said court entered on June 19, 1990. The order of said court entered on June 19, 1990 is modified, on the law, the facts and in the exercise of discretion to the extent that, upon reargument, the application for leave to serve a late notice of claim should be granted in full, without costs or disbursements, and otherwise affirmed.