Margery SINGLETON, as Administratrix
of the Estate of Jason Singleton,
Plaintiff,

v.

The CITY OF NEWBURGH, the City of
Newburgh Police Department, Henry
Seibel, Barry Corcoran, Donald Montroy
and Michael Vasquez, Defendants.

No. 96 Civ. 0169(WCC).

United States District Court,
S.D. New York.

April 6, 1998.

Featherstonhaugh, Conway, Wiley & Clyne, L.L.P., for Plaintiff, Albany, NY, Denis R. Hurley, Jr., of counsel.

Joseph A. Maria, P.C., for Defendants, White Plains, NY, Gregg D. Minkin, of counsel.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Margery Singleton ("plaintiff"), the grandmother of Jason Singleton ("Singleton") and the administratrix of his estate, brought this action for personal injury, wrongful death, and civil rights violations against defendants the City of Newburgh (the "City"), the City of Newburgh Police Department (the "Department"), Officers Barry Corcoran ("Corcoran"), Henry Seibel ("Seibel"), Donald Montroy ("Montroy") and Michael Vasquez ("Vasquez"). Defendants now move for summary judgment under Fed. R.Civ.P. 56. For the reasons discussed below, defendants' motion is granted in part and denied in part.

### BACKGROUND

On May 24, 1994 at approximately 3 p.m., Singleton was taken into custody by Newburgh police officers Seibel and Vasquez for allegedly beating his girlfriend, Aida Romero ("Romero"), with a broomstick. The officers transported Singleton and Romero to the station in separate patrol cars. Officer Seibel then brought Singleton into the booking room and directed him to empty his pockets. Singleton was not searched or charged. Officer Seibel then escorted Singleton to a holding cell, known as the "fish bowl," and locked the door. Prior to detaining Singleton, Seibel had removed all trash from the cell.

At approximately 4 p.m., Officer Corcoran saw Singleton in the fish bowl, jumping up and down and holding his groin, as if he had to urinate. Seibel opened the door to the cell, and informed Singleton that he was being charged with second degree assault and would have to be strip-searched before he would be permitted to use the bathroom. According to Corcoran and Seibel, Singleton mumbled something unintelligible in re-

sponse. The officers then asked Singleton to open his mouth. Singleton refused. The officers concluded that Singleton was secreting contraband in his mouth.

The parties disagree over what happened next. According to defendants, upon being told to open his mouth, Singleton began to chew and swallow. After ordering him repeatedly to open his mouth, Officer Corcoran grabbed Singleton's arm with his left hand and placed the web of his right hand above Singleton's Adam's apple, to prevent him from swallowing.

Defendants claim that at the same time, Officer Seibel wrapped his arms around Singleton's torso to perform the Heimlich maneuver. Seibel has testified that he performed the Heimlich maneuver in order to get Singleton to expel whatever he had been secreting in his mouth. Defendants maintain that at the time, Singleton was struggling with the officers, and Corcoran claims that Singleton was "thrashing about."

Officer Montroy, who was sitting in the booking room, saw a struggle occurring in the fish bowl. He ran to the cell and observed that Singleton was covering his mouth with his hands. Like Corcoran and Seibel, he concluded that Singleton was secreting contraband. Montroy claims that he tried unsuccessfully to pull Singleton's hands from his face and ultimately discharged a stream of Oleoresin Capsicum, or "pepper spray," to induce Singleton to cough. The stream ricocheted off Singleton's hands, and hit Corcoran in the eyes, causing Corcoran to release his hand from Singleton's throat.

Officer Vasquez, who was sitting in the communications room, heard Corcoran scream. Vasquez ran to the booking room, where he observed a struggle occurring and signaled Officer Gil to cover his post. He then entered the cell and tried to remove Singleton's hands from his face.

Shortly thereafter, Singleton fell to the floor, "gasping," "gurgling," and "convulsing." At some point, Singleton became unconscious, but the officers maintain that he had remained conscious the entire time he was standing. Officers Seibel and Montroy then administered first aid. Officer Gil called Mobile Life Support Services, which rendered further medical assistance. Mobile Life determined that Singleton's airway was full of blood and vomit. Singleton was then taken to St. Luke's Hospital, where he was pronounced dead.

Meanwhile, Officer Seibel searched the fish bowl and recovered a wet plastic bag, which appeared to have been chewed, containing a rock-like substance, later identified as crack cocaine. Officer Vasquez searched the back of the patrol car, where he found three small rocks, also identified as crack cocaine.

The autopsy report revealed 13 micrograms per milliliter of cocaine in Singleton's blood, and the reporting pathologist stated that the immediate cause of death was "acute cocaine poisoning."

The Orange County District Attorney's Office (the "DA's Office"), with the assistance of the Federal Bureau of Investigation ("FBI"), the Orange County Probation Department and the Department, conducted an investigation. Twenty-three people were interviewed and sworn statements were taken from each officer defendant. The DA's Office then issued a report, which concluded that Singleton "died as a result of ... voluntary ingestion of a lethal amount of cocaine." and that Singleton's injuries were "consistent with the accounts ... furnished by the police and ... were not associated with the cause of death."

After the DA's Office had concluded its investigation, Police Chief Bloom contacted various municipal and state agencies to determine if there existed a procedure for retrieving orally secreted contraband. According to Bloom, no office was aware of any such procedure and, prior to Singleton's death, the City had never considered implementing such a procedure, because no officer had ever encountered a suspect who refused to open his mouth after having orally secreted a foreign object.

Plaintiff presents a different version of the events. According to plaintiff, on May 24, 1994, Officers Seibel, Corcoran, Montroy and Vasquez "seized ... Singleton, physically assaulted [him], sprayed [him] with chemicals, choked [him] so as to obstruct his airway,

and subjected [him] to unreasonable, excessive and life threatening force...." Cplt. at ¶ 16. Though plaintiff does not claim that Singleton complied with the officers' instructions, she does submit that Singleton "never ... attempted to ... [cause the officers] any physical harm ... or escape ... their grasp." Pl.'s 56.1 Stmt. at ¶ 6. Plaintiff attributes Singleton's death to "excessive and unreasonable force used by the defendants." Cplt. at ¶ 17. She proffers a report of the New York State Department of Corrections, Medical Review Board, which determined that the cause of Singleton's death was neck compression and classified the death as a "homicide." Pl.'s Ex. G at 2. Additionally, plaintiff offers the opinion of Randall Paul McCauley, Professor of Criminology at the Indiana University of Pennsylvania, that the degree of force used by Officer Corcoran was excessive. *See* Pl.'s Ex. E at 3–4.

Plaintiff filed a notice of claim on August 8, 1994 against the City and the Department for wrongful death and the deprivation of Singleton's "constitutional rights." The notice asserted claims for "wrongful death, abuse of authority, unnecessary use of police force, [and] racial discrimination" by police officers against Singleton, on account of the City and Department's "negligence and professional misconduct." Pl.'s Ex. A at 1, 3. Plaintiff brought this action on January 16, 1996, alleging that Singleton had "sustained injury, pain and suffering, mental anguish, humiliation, death and [the] deprivation of civil and constitutional rights" as a result of the City and Department's negligence. *See* Pl.'s Ex. C.

## DISCUSSION

### I. *Summary Judgment Standard*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A disputed fact is material if, based on that fact, a reasonable jury could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106

S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, on a motion for summary judgment, all evidence must be viewed, and all inferences drawn, in the light most favorable to the nonmoving party. *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 36 (2d Cir.1994). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Id.* at 37. The role of the court on a motion for summary judgment is not to try issues of fact but rather to determine whether there are issues of fact to be tried. *Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995). "The drawing or inferences and the assessment of the credibility of the witnesses remain within the province of the [jury]." *Id.*

The party seeking summary judgment bears the initial burden of "informing the district court of the basis for its motion" and identifying the matters "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Upon the movant's satisfaction of that burden, the onus shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[It] must set forth specific facts showing that there is a genuine issue of fact for trial." *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 288, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

### II. *Section 1983 Claims*

Section 1983 provides that

[e]very person who, under color of any statute, ordinance, custom, or usage, of any State ..., subjects, or causes to be subjected, any ... person ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall

be liable to the party injured in [a] ... proper proceeding for redress....

### A. *Claim Against the City and Department*

 In *Monell v. Dept. of Social Serv. of the City of New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipal entities are "persons" to whom section 1983 applies. However, "a municipality can be found liable under section 1983 only where the municipality itself causes the constitutional violation at issue." *Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Thus, to impose section 1983 liability on a municipal entity, a plaintiff must show that the alleged violation resulted from an official policy, custom or practice. *Monell,* 436 U.S. at 690–91. A plaintiff need not demonstrate that the municipality had a formal rule or regulation that caused the constitutional deprivation. *See Vann,* 72 F.3d at 1049; *Villante v. Dept. of Corrections,* 786 F.2d 516, 519 (2d Cir.1986). A plaintiff "may establish the pertinent custom or policy by showing that the municipality, alerted to the possible use of excessive force by its police officers, exhibited deliberate indifference." *Vann,* 72 F.3d at 1049 (citing *Fiacco v. City of Rensselaer,* 783 F.2d 319, 326–27 (2d Cir.1986)).

 Thus, to defeat a motion for summary judgment on a section 1983 claim, a plaintiff must do more than "simpl[y] recit[e] ... a failure to train municipal employees." *See Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993); *Javid v. Scott,* 913 F.Supp. 223, 230–31 (S.D.N.Y.1996). She must produce "some evidence that policymakers were aware of a pattern of [unconstitutional conduct] but failed to [respond]." *Walker v. City of New York,* 974 F.2d 293, 300 (2d Cir.1992).

 Plaintiff alleges that the City was deliberately indifferent to "excessive use of force" by the police. Pl.'s 56.1 Stmt. at ¶ 26. To support this claim, plaintiff offers the deposition testimony of Police Chief Bloom and court papers alleging various constitutional violations by the City. *See id.* at ¶¶ 25–26; Pl.'s Ex. S, T. Bloom's testimony reveals that he was unaware of all but one civil

rights suit that was pending at the time of the deposition, and that none of the officer defendants was disciplined on account of these suits. The testimony also reveals that only two of the suits were brought while Bloom was Chief, or acting Chief, of Police. Additionally, plaintiff offers copies of court papers that allege various constitutional violations by the City. However, only three of these complaints allege excessive use of force by the police.

These documents do not demonstrate deliberate indifference to the excessive use of force. Noticeably absent from the record is any evidence regarding the City's investigative procedures for resolving complaints, or the circumstances surrounding the previous complaints. Accordingly, plaintiff's evidence cannot withstand defendants' motion for summary judgment. *Stengel v. City of Hartford,* 652 F.Supp. 572, 574 (D.Conn.1987) ("fact of a complaint and a failure to discipline an officer in relation thereto is ... insufficient") (citing *Turpin v. Mailet,* 619 F.2d 196, 202–04 (2d Cir.1980)). *See also Sarus v. Rotundo,* 831 F.2d 397, 402 (2d Cir.1987) (number of resisting arrest charges filed by police did not suggest policy of indifference to excessive use of force where plaintiff failed "to adduce evidence of the circumstances surrounding those arrests, or even to present corresponding figures from other police departments"). *Cf. Ferreira v. Westchester County,* 917 F.Supp. 209, 215 (S.D.N.Y.1996) ("evidence that a municipality repeatedly failed to meaningfully investigate complaints" could raise inference of custom, practice or policy). The mere fact of other lawsuits against the City does not provide a basis for liability. *Mendoza v. City of Rome,* 872 F.Supp. 1110, 1118 (N.D.N.Y.1994) ("claims ... filed against the City, standing alone, do[ ] not establish a pattern, policy, or practice which [is] causally related to the ... use of excessive force upon the plaintiff"). *Cf. Fiacco,* 783 F.2d at 328 ("evidence that a number of claims of police brutality had been made by other persons against the City, *together* with evidence as to the City's treatment of these claims, [is] relevant") (emphasis added). The complaints do no more than suggest that the City was on notice of vari-

ous civil rights abuses that had been alleged. *See Mendoza,* 872 F.Supp. at 1119 ("fact that ... claims were filed does not constitute evidence of violation of Constitutional rights"). Finally, the fact that Chief Bloom had not disciplined the officers accused of constitutional violations is irrelevant. Chief Bloom has testified that he has been acting Chief or Chief of Police since May, 1994. The actions cited by plaintiff all occurred prior to that time. *Accord id. See also Anderson v. City of New York,* 657 F.Supp. 1571, 1575–76 (S.D.N.Y.1987) (to state claim for failure to discipline, plaintiff "must link the behavior in question to the policy of failure to discipline"). Chief Bloom has further testified that it was not his responsibility to discipline officers until he became acting Chief in 1994. Plaintiffs do not submit any evidence suggesting otherwise.

■ The Complaint also alleges that the City and Department failed to train police officers in the proper use of force. However, it appears that plaintiff has abandoned this claim, because it is not raised elsewhere in the record. *Cf. Carnegie v. Miller,* 811 F.Supp. 907, 913 (S.D.N.Y.1993). Plaintiff cannot withstand a motion for summary judgment by mere reliance on conclusory allegations contained in the Complaint. Rather, she must "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250. Moreover, plaintiff may not demonstrate a failure to train by relying "exclusively on the record of purported misconduct of the individual defendants." *Velasquez v. City of New York,* 960 F.Supp. 776, 783 (S.D.N.Y.1997). To the extent that plaintiff seeks to rely on Chief Bloom's testimony to demonstrate a failure to train, she fails. Plaintiff "must do more than show the need for training" on the use of force; she "must show how a particular policymaker's specific choice with respect to the training deficiency at issue ... directly caused [Singleton's] injuries." *Ferreira,* 917 F.Supp. at 215–16.

Because plaintiff has failed to produce evidence of deliberate indifference by the City or Department, her section 1983 claim against these defendants is dismissed.

### B. *Claim Against the Officers in Their Official Capacities*

■ To the extent that plaintiff brings claims against the officers in their official capacities, these claims must be dismissed, because plaintiff cannot sustain her claim against the City and Department. "[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the [municipal] entity .... for the real party in interest is the entity." *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (internal citation omitted); *Amato v. City of Saratoga Springs,* 972 F.Supp. 120, 125–26 (N.D.N.Y.1997). *Accord Stengel,* 652 F.Supp. at 575 (dismissing claims against officers in their official capacities because claims against City had been dismissed). Accordingly, the Court grants summary judgment to each officer defendant on the claims against them in their official capacities.

### C. *Claim Against the Officers in Their Personal Capacities*

Plaintiff also brings a section 1983 claim against Officers Corcoran, Seibel, Montroy and Vasquez in their personal capacities. Because we find that Officers Seibel, Montroy and Vasquez are protected by the qualified immunity defense, we dismiss plaintiff's claim with respect to them.

■ The qualified immunity defense protects government actors performing discretionary functions from personal liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald, 457 U.S. 800,* 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), or "it was objectively reasonable for them to believe that their [conduct] did not violate those rights." *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991). *See also Doe v. Marsh,* 105 F.3d 106, 109 (2d Cir.1997); *Salim v. Proulx,* 93 F.3d 86, 89 (2d Cir.1996); *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995). In other words, the defense is available when " 'a reasonable officer could have believed' " his conduct " 'to be lawful, in light of clearly established law and the information [he] possessed.' " *Marshall*

*v. Sullivan,* 105 F.3d 47, 53 (2d Cir.1996) (quoting *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam)).

■ In *Robison v. Via,* the Court of Appeals held that a government defendant would be entitled to summary judgment on qualified immunity grounds when

> "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that is was objectively unreasonable for the defendant[ ]" to believe that he was acting in a fashion that did not clearly violate an established federally protected right.

821 F.2d 913, 921 (2d Cir.1987) (quoting *Halperin v. Kissinger,* 807 F.2d 180, 189 (D.C.Cir.1986)). Thus, to prevail on a motion for summary judgment in an excessive use of force case, the evidence must show that "no rational jury could [find] that the force used was so excessive that no reasonable officer would have made the same choice." *Lennon,* 66 F.3d at 426.

■ Freedom from the use of excessive force is a clearly established constitutional right. In *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court held that "all claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment 'reasonableness' standard." [1] Whether the degree of force used was "reasonable" requires a balancing of the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." 490 U.S. at 395–96. Of particular importance is "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. However, "[t]he reasonableness of the force used" must consider "the totality of the circum-

stances faced by the officer[s]." *Lennon,* 66 F.3d at 425.

■ One factor justifying the use of force is the appearance that the suspect is secreting contraband which could be used as evidence in a criminal prosecution. While a person has a clearly established right to be free from excessive force by police, it is equally clear that a person has no constitutional right to secrete evidence. *United States v. Holloway,* 906 F.Supp. 1437, 1441–42 (D.Kan.1995). *Cf. Segura v. United States,* 468 U.S. 796, 816, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984) ("The essence of [the claim] that there is some 'constitutional right' to destroy evidence .... defies both logic and common sense"). The degree of force that may be used in attempting to seize secreted evidence must therefore be balanced with the legitimate goals of law enforcement, and determined in light of the totality of the circumstances.

For example, in *Rochin v. California,* 342 U.S. 165, 166, 174, 72 S.Ct. 205, 96 L.Ed. 183 (1952), the Supreme Court held that it was unreasonable for police officers to transport a suspect to a hospital and administer an emetic to induce vomiting where they had broken into the suspect's home and forced the door to his room, without a warrant, and based solely upon "some information that [the petitioner] was selling narcotics." Accordingly, the Court held that the search and seizure were unconstitutional under the Due Process Clause. *Id.,* 342 U.S. at 174.

However, since *Rochin,* the courts have upheld the constitutionality of searches of a suspect's mouth when the suspect has been properly detained under the Fourth Amendment. The pertinent inquiry is whether the intrusion was reasonable under the circumstances. *See, e.g., Becerril v. Kidd,* No. 90–16370, 1992 WL 207930, at *3 (9th Cir. Aug. 27, 1992) (no excessive force where officer struck suspect "once in the back of the head" to dislodge syringe secreted in mouth); *United States v. Harrison,* 432 F.2d 1328,

---

1. The Court of Appeals for the Second Circuit has held that the Fourth Amendment, as opposed to the Eighth or Fourteenth Amendments, protects individuals "prior to the time [they are] arrested, ... arraigned or formally charged, and remain[ ] in [police] custody." *See Powell v. Gardner,* 891 F.2d 1039, 1043 (2d Cir.1989).

1330 (D.C.Cir.1970) (during execution of warrant, it was reasonable for officer to grab suspect by throat to prevent suspect from swallowing envelope of heroin); *State v. Desmond*, 593 So.2d 965, 969 (La.App.1992) ("Although policemen can use reasonable force to prevent the swallowing of evidence, officers may not constitutionally beat and choke suspects in order to gain that evidence"); *State v. Jacques*, 225 Kan. 38, 587 P.2d 861, 865 (1978) ("When an officer has probable cause to believe that a criminal offense is being committed in his presence ... he may use reasonable force to subdue the [suspect] and prevent the [suspect] from swallowing the evidence."); *People v. Bracamonte*, 15 Cal.3d 394, 124 Cal.Rptr. 528, 536 n. 6, 540 P.2d 624, 632 n. 6 (1975) (in banc) ("attempts to swallow evidence can be prevented ... as long as excessive force is not employed") (internal citation omitted).

In light of the evidence presented, the Court finds that there exists a material question of fact whether Officer Corcoran used reasonable force in attempting to seize contraband from Singleton's mouth, and therefore denies summary judgment to him on this claim. However, the Court finds that as a matter of law, Officers Seibel, Montroy and Vasquez acted reasonably under the circumstances, and therefore grants summary judgment in their favor.

### 1. *Officer Corcoran*

■ The Court denies summary judgment to Officer Corcoran, because there exists a question of material fact whether the force he used on Singleton's neck was reasonable under the circumstances. According to Corcoran, he placed the web of his hand over Singleton's Adam's apple for thirty to sixty seconds, in order to prevent Singleton from swallowing what he thought to be contraband. Plaintiff does not contradict this account. The parties do however contest whether Corcoran impermissibly placed Singleton in a choke hold, by placing his hand on Singleton's neck. Corcoran submits that he did not use a choke hold on Singleton. Plaintiff claims that he did. This is a question of semantics, with which the Court need not be concerned. The relevant inquiry is whether the force used by Officer Corcoran was reasonable under the circumstances. The Court concludes that plaintiff has presented sufficient evidence to suggest that it was not.

To show that the use of force by Officer Corcoran was unreasonable, plaintiff offers a certified report of the New York State Department of Corrections, Medical Review Board, which determined that the cause of Singleton's death was neck compression and classified the death as a "homicide." Pl.'s Ex. G at 2. She also offers the opinion of Randall Paul McCauley, Professor of Criminology at the Indiana University of Pennsylvania, that the degree of force used by Officer Corcoran was excessive. *See* Pl.'s Ex. E at 3–4.

As a preliminary matter, the Court notes that Professor McCauley's opinion is admissible, because it is incorporated by reference in his sworn affidavit and attached to plaintiff's papers as an exhibit. *See* McCauley Aff. ¶ 3; *In re Sapiens Sec. Lit.*, No. 94 Civ. 3315, 1996 WL 689360 (S.D.N.Y. Nov.27, 1996).[2] The Court will therefore consider it. The Court also considers the certified report of the New York Department of Corrections. *See* Fed.R.Evid. 803(8)(c).

These reports suggest that Singleton died as a result of the pressure applied to his neck by Officer Singleton. The Court reaches this conclusion, even though the Department of Corrections report does not specifically name

---

**2.** Defendants suggest that the McCauley affidavit should be excluded from evidence because it is conclusory. We disagree. McCauley's affidavit identifies the documents upon which he relied in forming his opinion, and provides the basic facts supporting his conclusions. See McCauley Aff. ¶¶ 4–11. This is all that the Federal Rules of Civil Procedure require. *See Iacobelli Constr., Inc. v. County of Monroe*, 32 F.3d 19, 25 (2d Cir.1994) ("affidavit stating the facts upon which the expert's opinion is based satisfies [R]ule 56(e) even if the data supporting the facts is not at-

tached"). *See also* 11 Moore § 56.14[1][e][i], at 56–170 (3d ed.1997) ("expert is required to inform the court of the facts and reasons from which the expert's opinion was derived so that the court can look behind the expert's 'ultimate conclusion' ... and analyze the adequacy of its foundation") (citation omitted). Moreover, even if McCauley's affidavit were inadmissible, as discussed below, there exists sufficient evidence in the record for a reasonable juror to conclude that the force used by Officer Corcoran was excessive.

Officer Corcoran, but rather identifies the officers as A, B, C and D. The report, considered in light of the record as a whole, and Officer Corcoran's deposition testimony in particular, establishes that it was Corcoran who applied pressure to Singleton's neck. *See* Pl.'s Ex. F, at 2 ¶ 3; Ex. G, at 3 ¶ 4; Corcoran Dep., at 35–37. When taken together with the uncontested fact that Singleton was not actively resisting or evading arrest nor threatening the safety of the officers, these documents suggest that the force used by Officer Corcoran was excessive. *Cf. Tennessee v. Garner,* 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) (permitting use of deadly force to stop fleeing felon, if officer reasonably believed that such force was necessary to protect himself or others from death or serious physical harm); *Gassner v. City of Garland Texas,* 864 F.2d 394, 400 (5th Cir.1989) (granting qualified immunity to officer who applied pressure to plaintiff's neck where plaintiff admittedly resisted arrest); *Williams v. Kelley,* 624 F.2d 695, 696, 698 (5th Cir.1980) (affirming judgment dismissing claim where officer applied "fatal choke hold" to protect second officer from detainee who "menaced" him "with clenched fists"). Accordingly, we find that plaintiff has submitted sufficient evidence that Corcoran's use of force was unreasonable, because it was deadly, and Singleton was not resisting arrest or threatening the safety of the officers. For this reason, the Court denies summary judgment to Officer Corcoran.

### 2. *Officer Seibel*

■ The Court however grants summary judgment to Officer Seibel, because as a matter of law, the use of the Heimlich maneuver to expel suspected contraband was reasonable under the circumstances. Unlike the choke hold, which is prohibited in Newburgh, the Heimlich maneuver is a universally accepted method of first aid, used to expel foreign objects from the airway or mouth. Moreover, Seibel is a registered nurse, who has been trained in the Heimlich maneuver. For these reasons, we hold that Seibel's use of force was reasonable under the circumstances, and therefore dismiss plaintiff's constitutional claim against him. *Cf. Becerril,* 1992 WL 207930, at *3 (no excessive force

where officer struck suspect in the back of the head to dislodge secreted syringe); *Landy v. Irizarry,* 884 F.Supp. 788, 799 (S.D.N.Y.1995) (same, where officer allegedly "jammed" gun into back of plaintiff's head, because officer's use of force was "graduated"; officer first asked plaintiff to stop, grabbed him, and only then used gun).

### 3. *Officer Montroy*

■ The Court also grants summary judgment to Officer Montroy. Given the undisputed evidence that he believed Singleton was about to swallow contraband, it was not unreasonable for him to direct a stream of pepper spray at Singleton. *Cf. Monday v. Oullette,* 118 F.3d 1099, 1103–04 (6th Cir. 1997) (use of single burst of pepper spray reasonable where plaintiff adamantly refused to go to hospital and officer believed that plaintiff had consumed lethal amount of alcohol); *Griffin v. City of Clanton,* 932 F.Supp. 1359, (M.D.Ala.1996) (use of pepper spray justified where officer believed plaintiff was intoxicated and "struggling with a number of officers," even where officer sprayed plaintiff directly in the face); *Holloway,* 906 F.Supp. at 1443 ("use of [pepper spray] to obtain contents of [suspect's] mouth was reasonable .... [where suspect] was sprayed in the face only once .... [and] removal of crack cocaine .... potentially minimized the risk of accidental overdose"). Moreover, we note that plaintiff has submitted no evidence to suggest that Singleton was injured by the spray, in any way. *See Price v. County of San Diego,* No. Civ. 94–1917–R, 1998 WL 16007, at *2, *17 n. 6 (S.D.Cal. Jan. 8, 1998) (use of pepper spray not excessive where spray did not contribute to cause of death); *Johnson v. Harron,* No. 91–CV–1460, 1995 WL 319943, at *25 (N.D.N.Y. May 23, 1995) ("[w]hile the plaintiff in a[n] excessive force case need not demonstrate the existence of severe, disabling injuries, the case law ... indicates that the complete absence of injury is fatal to such claims") (citations omitted). Accordingly, we dismiss plaintiff's constitutional claim against Officer Montroy.

### 4. *Officer Vasquez*

■ The Court also grants summary judgment to Officer Vasquez. First, we note

that as an officer who was witnessing an incident where a civilian's constitutional rights could potentially be violated, Vasquez was required to intervene. *See O'Neill v. Krzeminski,* 839 F.2d 9, 14 (2d Cir.1988); *King v. Macri,* 800 F.Supp. 1157, 1165 (S.D.N.Y.1992), *aff'd in part, vacated in part on other grounds,* 993 F.2d 294 (2d Cir.1993). Moreover, the record is devoid of any evidence that Vasquez did more than attempt to remove Singleton's hands from his face or that Singleton was injured by the force that Vasquez applied. Accordingly, as a matter of law, such evidence is insufficient to state a claim for excessive use of force. *See, e.g., Lennon,* 66 F.3d at 426 (no excessive force where officer "yanked" plaintiff's hand from ignition, even though she received medical treatment for wrist); *Robison,* 821 F.2d at 923 (granting defendant's motion for summary judgment because plaintiff's allegations that defendant pushed and pulled her and pried at her fingers did not state claim for excessive use of force). We therefore dismiss plaintiff's constitutional claim against Officer Vasquez.

### III. State Law Tort Claims

█ Finally, the Court will exercise supplemental jurisdiction over plaintiff's state law claims for personal injury and wrongful death. The Court has discretion to exercise supplemental jurisdiction when a plaintiff's federal and state claims "derive from a common nucleus of operative fact," so that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Because plaintiff's state and federal

claims arise from the same facts, and we decline to dismiss plaintiff's claims against one of the defendants, the Court will exercise supplemental jurisdiction over these claims in the interest of "judicial economy [and] convenience and fairness to [the] litigants," *id.,* 383 U.S. at 726. *Accord Javid,* 913 F.Supp. at 229.

Defendants contend, however, that plaintiff's state law tort claims should be dismissed with prejudice, because she failed to bring the personal injury claim within the statutory period of limitations, and failed to allege a claim for wrongful death in the Complaint. Because the Court has retained jurisdiction over the state law claims, we consider each of these arguments below.

█ Defendants are correct that New York's General Municipal Law provides a one-year-and-ninety-day limitation period for personal injury claims and a two-year period for wrongful death claims brought against a municipal entity or its employees. *See* N.Y. Gen. Mun. Law §§ 50–i, 50–j. *See also Gonzalez v. City of New York,* No. 94 Civ. 7377, 1996 WL 227824, at *2 (S.D.N.Y. May 3, 1996) (interpreting section 50–i to apply to officers, agents or employees "whose conduct has caused injury") (citing *Norr v. Spiegler,* 72 A.D.2d 20, 22–23, 423 N.Y.S.2d 177, 179 (1st Dept.1980), *aff'd,* 53 N.Y.2d 661, 438 N.Y.S.2d 1000, 421 N.E.2d 120 (1981)).[3] If such action is not commenced within the applicable statutory period, it is time barred and must therefore be dismissed. *See id.*

█ Plaintiff commenced this action on January 16, 1996, one year and eight months after the state law claims arose. Thus, she failed to bring the personal injury claim with-

---

**3.** The General Municipal Law applies to all negligence actions brought against municipal employees who were acting within the scope of their employment when the allegedly negligent conduct occurred. *See* N.Y. Gen. Obl. Law § 50–j. *See also Wilson v. City of New York,* 173 A.D.2d 276, 277, 569 N.Y.S.2d 667, 668 (1st Dep't 1991) (dismissing personal injury claim against off-duty police officer where action was brought after one-year-and-ninety-day limitation period and officer was attempting to stop crime in progress when injury occurred). Plaintiff does not allege that the officer defendants were acting outside the scope of their employment when they attempted to expel the secreted contraband from

Singleton's mouth. And we have found no authority which would support a finding that they were doing so. *See, e.g., Savarese v. City of New York Housing Auth.,* 172 A.D.2d 506, 507–08, 567 N.Y.S.2d 855, 856–57 (2d Dep't 1991) (off-duty police officers who allegedly assaulted petitioner while effectuating his arrest acted within scope of employment as a matter of law). *Cf. Pekarsky v. City of New York,* 240 A.D.2d 645, 659 N.Y.S.2d 496, 497 (2d Dep't 1997) (vacationing police officer acted outside scope of employment when he fired gun without intending to effectuate arrest). We therefore conclude that the limitation period of section 50–j applies.

in the statutory one-year-and-ninety-day limitation period prescribed by section 50–i, and it must be dismissed with prejudice.[4]

The Court must also dismiss plaintiff's wrongful death claim. To state a claim for wrongful death in New York, a plaintiff must allege, *inter alia*, the survival of a distributee who suffers pecuniary loss on account of the decedent's death, and the appointment of a personal representative for the decedent. *Johnson v. City of New York*, No. 90 Civ. 7125, 1991 WL 41636, at *3 (S.D.N.Y.1991); *Chong v. New York City Transit Auth.*, 83 A.D.2d 546, 547, 441 N.Y.S.2d 24, 25–26 (2d Dept.1981). Moreover, to defeat a motion for summary judgment in a wrongful death case, the plaintiff must offer proof of pecuniary loss. *Gonzalez v. New York City Housing Auth.*, 77 N.Y.2d 663, 668, 569 N.Y.S.2d 915, 915, 572 N.E.2d 598 (1991); *Datskow v. Teledyne Continental Motors Aircraft Prods.*, 807 F.Supp. 941, 945 (W.D.N.Y.1992) (citing *Public Administrator of Kings County v. U.S. Fleet Leasing of New York, Inc.*, 159 A.D.2d 331, 332, 552 N.Y.S.2d 608, 609 (1990)); *Broad v. Becher*, No. 87–CV–1330, 1989 WL 49777, at *3 (N.D.N.Y. May 9, 1989). In this case, plaintiff has neither alleged nor presented evidence that she—or any other person—suffered pecuniary loss as a result of Singleton's death. We must therefore dismiss her claim for wrongful death. *Accord Datskow*, 807 F.Supp. at 946–47 (dismissing wrongful death claim on summary judgment where plaintiffs failed to prove pecuniary loss); *Broad*, 1989 WL 49777, at *3–4 (granting summary judgment to defendants where plaintiff failed to allege pecuniary loss, and therefore could not support underlying wrongful death claim).

While the Court dismisses plaintiff's wrongful death claim, we grant her leave to re-plead it within 20 days of the entry of this Opinion and Order. Fed.R.Civ.P. 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." We note that plaintiff has submitted proof that she is the administratrix of Singleton's estate, and has been granted a letter of administration specifically authorizing her to bring a wrongful death action on behalf of the estate. Moreover, the notice of claim states that she is Singleton's grandmother, a surviving distributee. *Accord Habrack v. Kupersmith*, No. 87 Civ. 4712, 1988 WL 102037, at *2 (S.D.N.Y. Sept.23, 1988) (dismissing wrongful death claim on motion for summary judgment where plaintiff failed to allege pecuniary loss but granting leave to re-plead); *Chong*, 83 A.D.2d at 547, 441 N.Y.S.2d at 26 (dismissing complaint that failed to state pecuniary injuries without prejudice). *See also Gregory v. Monroe County Water Auth.*, 795 F.Supp. 92, 93 (W.D.N.Y.1992) (permitting amendment to state cause of action for wrongful death where complaint alleged death on account of defendants' negligence).

### CONCLUSION

For the foregoing reasons, plaintiff's section 1983 claims against the City of Newburgh, the City of Newburgh Police Department, Officer Henry Seibel, Officer Donald Montroy, and Officer Michael Vasquez, and plaintiff's state law personal injury claim against all defendants are dismissed with prejudice. Plaintiff's wrongful death claim is dismissed with leave to re-plead within twenty days of this Opinion and Order. The motion for summary judgment dismissing plaintiff's section 1983 claim against Officer Corcoran is denied.

SO ORDERED.

---

4. Plaintiff suggests that the statute of limitations for Singleton's personal injury claim should be two years, because plaintiff brought that claim with her wrongful death claim. Plaintiff is mistaken. Under New York law, claims for personal injury and wrongful death, even when consolidated in the same action, are separate and distinct, *Ratka v. St. Francis Hosp.*, 44 N.Y.2d 604, 609–10, 407 N.Y.S.2d 458, 460, 378 N.E.2d 1027 (1978); *Yoo v. New York City Health & Hosp. Corp.*, 239 A.D.2d 267, 657 N.Y.S.2d 189, 190 (1st Dep't 1997), and are subject to different limitations periods, *see Ruiz v. New York City Health & Hospitals Corp.*, 165 A.D.2d 75, 75, 566 N.Y.S.2d 217, 219 (1st Dep't 1991).